IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL BROWN | : | NO.  07-0296-1 |

MEMORANDUM AND ORDER

PRATTER, J.                                                                                                                    JANUARY 16, 2008

Defendant Michael Brown has been indicted on one count each of possession with intent to distribute marijuana and methylenedioxymethamphetamine ("MDMA"), one count of possession of a firearm in furtherance of a drug trafficking crime, and two counts of possession of a firearm by a convicted felon.  As more particularly described below, the charges arise from a traffic stop that occurred on March 12, 2006, and from an October 23, 2006 seizure of items from a house owned by Mr. Brown.

Mr. Brown has moved to suppress the firearm that was seized during the March 12, 2006 traffic stop, and to suppress the evidence seized on October 23, 2006 during the attempted execution of an arrest warrant for Mr. Brown.  Mr. Brown has also moved to sever the charges relating to the March 12, 2006 traffic stop from the charges relating to the weapons and drugs allegedly found on October 23, 2006.  The Government opposes all three motions and separately moves to admit evidence of Mr. Brown's August 11, 2006 arrest and conviction in New Castle County, Delaware for drug trafficking.

For the reasons discussed below, the Court will deny both motions to suppress and grant the Motion to Sever.  The Court will grant in part and deny in part the Government's evidentiary

motion to the extent that evidence of the August 2006 arrest and conviction shall be admissible with respect to the charges arising from the October 23, 2006 seizures, but shall not be admissible with respect to the charges arising from the March 12, 2006 traffic stop.[1]

### I.   Motion to Suppress Firearm Seized on March 12, 2006 During Traffic Stop

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  The touchstone of a court's Fourth Amendment analysis is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security."  Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) (quoting Terry v. Ohio, 392 U.S. 1 (1968)).  Reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."  Id. at 109 (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)).

Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.  Whren v. United States, 517 U.S. 806, 809-10 (1996).  The stop and detention of motorists is reasonable under the Fourth Amendment where the police officer has probable cause[2] to believe a traffic violation has occurred.  Whren, 517 U.S. at 810 (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)).  The reasonableness of traffic stops does

---

[1] At this time, the Court expresses no view on the possible admissibility of the proposed testimony of the Government's narcotics expert, as described by the Government's counsel during oral argument.

[2] There is some question as to whether the appropriate standard is "probable cause" or "reasonable suspicion," which is a slightly lower standard, but the Court need not decide that question here because Sergeant Williams's observation of Mr. Brown's failure to signal, if credited, meets the higher standard of probable cause.

not depend on the actual, subjective motivation of the individual officers involved.  Id. at 813. The Government bears the burden of proving by a preponderance of the evidence that Mr. Brown's constitutional rights were not violated by police action.

Here, relying on the arresting officer's report and testimony, the Government asserts that the officer observed Mr. Brown fail to signal a turn.  Mr. Brown, however, contends that the purported failure to signal is a post-hoc fabrication created to justify what was otherwise an unlawful seizure.  Thus, argues Mr. Brown, because the officer did not have a proper basis to stop him, the stop was unreasonable under the Fourth Amendment and the fruits of the unlawful seizure (i.e., the gun taken from Mr. Brown's person, the police scanning device and several cell phones) should be suppressed.

The Court finds the officer's report and testimony credible and, therefore, concludes that the officer had probable cause to stop Mr. Brown because failure to use a turn signal is a violation of Pennsylvania law.  See 75 Pa. C.S.A. § 3334(b) (section of the Pennsylvania Motor Vehicle Code regulating the use of turn signals).[3]  Thus, the Motion to suppress the items seized during the March 12, 2006 stop will be denied.[4]

---

[3] Mr. Brown's contention as a reason for discrediting the officer's testimony that it is unlikely that he would have failed to signal with a police car 30-40 feet behind him is itself unpersuasive, given that Mr. Brown's testimony and phone records show that while he was driving he was also speaking on his cell phone when he was stopped (see Tr. 1/8/08 at 72; Def. Ex. 2), and that it was still relatively dark around the time of the stop at 5:00 a.m (see Tr. 1/8/08 at 7-8).  In addition to Sergeant Williams's testimony, the Court takes judicial notice that, according to the United States Navy data, civil twilight on March 12, 2006 began almost an hour after the stop at 5:50 a.m., and sunrise was not until 6:17 a.m. that day.  See "Sun and Moon Date for One Day," U.S. Navy Observatory Astronomical Applications Department, http://aa.usno.navy.mil/cgi-bin/aa_pap.pl (last visited January 14, 2008).

[4] Mr. Brown does not dispute that if the traffic stop was lawful, the pat-down frisk that revealed the weapon was also reasonable under the circumstances.  (See Tr. 1/8/08 at 137-38.)

**II.     Motion to Suppress Physical Evidence Seized on October 23, 2006**

An arrest warrant allows a police officer to enter a domicile in which a suspect lives, but only when there is reason to believe that the suspect is inside. Payton v. New York, 445 U.S. 573, 603 (1980). The Third Circuit Court of Appeals has held that the police are only allowed to enter a suspect's home to make an arrest when they have probable cause to believe that the suspect is inside. United States v. Veal, 453 F.3d 164, 167-68 (3d Cir. 2006); United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2005).

Here, the law enforcement officers who entered 5045 Irving Street had an arrest warrant for Mr. Brown, but did not have a search warrant for the 5045 Irving Street residence. It is undisputed that the residence was empty when the police entered, and Mr. Brown asserts that there is no evidence that there were any "signs of life" indicating that anyone was home.

At the evidentiary hearing held on this Motion on January 8, 2008, James Carroll, Deputy United States Marshal, testified regarding the attempted execution of the arrest warrant for Michael Brown. The Deputy Marshal headed a task force of city, state and federal law enforcement personnel as part of an effort, dubbed Operation FALCON III, to execute outstanding arrest warrants and apprehend fugitives. (Tr. 1/8/08 at 85-86.)

As a preliminary matter, in preparation for serving the Brown arrest warrant, Deputy Carroll conducted an investigation to determine where Mr. Brown could be located, including a review of a number of sources. (Id. at 93-94.) First, the Deputy Marshal consulted Autotrack, which runs background checks that track by identifiers such as name, Social Security number and date of birth. (Id. at 94.) The Autotrack printout, which was printed on October 16, 2006, showed Mr. Brown's most recent address as 5045 Irving Street. (Id. at 94-95.) Second, Deputy

4

Carroll reviewed the PCIC criminal history record for Mr. Brown, which as of July 2006 also showed the 5045 Irving Street address for Mr. Brown. (Id. at 95.) Third, voter registration records also showed the 5045 Irving Street address as Mr. Brown's address over a course of three or four years. (Id. at 95-96.) Lastly, real estate records showed that Mr. Brown was the owner of the house at 5045 Irving Street, a status that Mr. Brown does not dispute. (Id. at 96.)

One business day prior to October 23, 2006, Deputy Carroll also conducted a "drive-by" of the 5045 Irving Street house to determine whether it was a genuine address location and whether it appeared to be occupied. (Id. at 96-97.) Deputy Carroll testified that although he did not see any "signs of life" at the time of the drive-by, he observed that the house was not "bombed out" or vacant. (Id. at 97.)

On October 23, 2006, Deputy Carroll and his team arrived at 5045 Irving Street around 5:45 a.m. (Id. at 99-100.) Prior to entering, Deputy Carroll observed through the front window that there were lights and a television on inside the house, and that on a table in the front room there appeared to be some sort of food in a dish. (Id. at 100.) In addition, a neighbor, after having been shown a photograph of Mr. Brown, identified Mr. Brown as the person he had seen in the house the night before. (Id.) Based on these observations, asserts the Government, the officers had probable cause to believe Mr. Brown was inside the house at the time, and, therefore, their entry into the house to execute the arrest warrant was reasonable.

The Court agrees. The documents cited by Deputy Carroll demonstrate ample independent connections between Mr. Brown and 5045 Irving Street – not the least of which being his undisputed ownership of the property – for a reasonable person to conclude that Mr. Brown resided at 5045 Irving Street. Because the Court finds Deputy Marshall's observations

5

credible and uncontradicted by any evidence currently in the record, including the contemporaneous "signs of life" such as the lights and television being on and remnants of a meal, the Court also concludes that when law enforcement personnel arrived to execute the arrest warrant on the morning of October 23, 2006 around 5:45 a.m., a time when many people are still at home, there were sufficient indicia to conclude that Mr. Brown was actually and currently present at 5045 Irving Street. In addition, the Court's review of the Deputy's folder on which he testified he made a quick note of the report to him of the neighbor's input to another officer as to Mr. Brown's presence at the location the night before demonstrated a sufficient aura of authenticity to lend additional support for the officer's action in moving ahead to enter the premises. Thus, the Motion to suppress evidence of items seized from 5045 Irving Street on October 23, 2006 also will be denied.[5]

### III.     Motion to Sever

Rule 8 of the Federal Rules of Criminal Procedure provides that multiple offenses may be joined if they are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan. Fed. R. Crim. P. 8(a); United States v. McGill, 964 F.2d 222, 241 (3d Cir. 1992). Rule 8(a) is designed to promote judicial economy and to preserve the prosecution's resources. United States v. Gorecki, 813 F.2d 40, 42 (3d Cir. 1987).

Offenses arising from a common act or series of conduct are properly joined and should not be severed. United States v. Hynson, 2007 WL 2692327, at *7 (E.D. Pa. 2007) (citing

---

[5] Mr. Brown does not dispute that the weapons and drugs were in plain view and, therefore, that once the police officers were inside the house, they had a valid basis for subsequently obtaining a search warrant for the house. (See Tr. 1/8/08 at 83-84.)

United States v. Eufrasio, 935 F.2d 553, 570 (3d Cir. 1991)).  Rule 8(a) and (b) "permit [j]oinder of offenses and defendants, respectively, when a transactional nexus exists between the offenses or defendants to be joined."  Eufrasio, 935 F.2d at 570.  When evaluating either joinder of offenses or defendants, courts focus on whether the offenses or defendants arise out of a common series of acts or transactions.  Id.

Even if the joinder of charges is proper, however, the Court *may*, pursuant to Rule 14, order separate trials "or provide whatever other relief justice requires" where it appears that the joinder of offenses impermissibly prejudices a defendant.  Fed. R. Crim. P. 14.  To establish that severance is warranted, the defendant has the burden of demonstrating "clear and substantial prejudice" that would result in a manifestly unfair trial.  Eufrasio, 935 F.2d at 58.

In United States v. Plummer, 2007 WL 2973712 (W.D. Pa. Oct. 10, 2007), the defendant was charged with (1) conspiracy to acquire firearms through the use of false statement on or about August 21-24, 2004; (2) possession of a firearm by a convicted felon on August 24, 2004; (3) conspiracy to distribute and possess with intent to distribute crack cocaine on or about November 18, 2005; and (4) possession of a firearm by a convicted felon on November 18, 2005.  Granting the defense motion to sever, the court held that three separate trials would be held to address Counts 1 and 2, Count 3, and Count 4, respectively.  Id. at *6.  The court reasoned that although Counts 3 and 4 involved conduct that occurred in temporal proximity, there was "no other connection between the charges."  Id. at *5.  In contrast to a situation where drugs and guns are found in close physical proximity, under these circumstances, explained the court, there was "no basis to infer that the conduct was part of a common scheme."  Id.

Likewise, in United States v. Chavis, 296 F.3d 450 (6th Cir. 2002), the Court of Appeals

for the Sixth Circuit held that joinder was improper in a similar fact pattern, concluding that the drug and firearm offenses were not of the same or similar character. Id. at 456-61. In that case, as here with Mr. Brown, the indictment on its face did not allege any connection between the drug and firearm charges. See id. In both Chavis and Plummer, the courts held that separate trials were appropriate under Rules 8 and 14. After close scrutiny of the indictment here, counsel's submissions and the cases presenting various fact patterns, the Court concludes that this case warrants severance of certain of the charges.

The Court does not come to this conclusion lightly or without due regard for the importance of judicial and prosecutorial economy of efforts and resources. The numerous non-controlling cases cited by the Government largely deny motions to sever where the offenses in question were of the same or similar character, e.g., two separate gun charges or two separate drug offenses. Other courts have denied motions to sever in cases where the indictment facially indicated some connection between temporally separate gun and drug offenses, such as a conspiracy or possession of a firearm in furtherance of a drug trafficking crime. Such cases do not adequately describe the intended prosecution of Mr. Brown, however.

Here, Mr. Brown is charged with (1) possession of a firearm by a convicted felon on or about March 12, 2006; (2) possession with intent to distribute marijuana on or about October 23, 2006; (3) possession with intent to distribute MDMA on or about October 23, 2006; (4) possession of a firearm in furtherance of a drug trafficking crime on or about October 23, 2006; and (5) possession of a firearm by a convicted felon on or about October 23, 2006. Count 1 relates to a weapon seized on March 12, 2006 during a traffic stop, while the remaining charges relate to items seized some seven months later on October 23, 2006 from an unoccupied house.

Mr. Brown asserts that the single March 12, 2006 firearm offense is entirely unrelated and distinct from the charges relating to or emanating from the items allegedly found at 5045 Irving Street.

The multiple firearm possession charges are "of the same or similar character" within the meaning of Rule 8. The drug offenses, however, are not. The Court concludes that March 12, 2006 firearm offense is <u>not</u> properly joined with the October 23, 2006 drug offenses because the March 12, 2006 offense is completely unrelated both physically *and* temporally from any alleged drug activity. In addition, there is no apparent connection between the offenses, particularly because Mr. Brown is *not* charged with participating in a drug conspiracy or with possessing a weapon on March 12, 2006 in furtherance of a drug trafficking crime. Rather, the March 12 possession charge involves an isolated incident of his actual possession a single firearm in public with no evident connection to any drugs or drug crimes. In contrast, the remaining charges in the indictment relate to the constructive possession of multiple weapons and drugs in Mr. Brown's alleged home. Moreover, the March 12 offense occurred more than seven months prior to the October 23 offenses. The separate crimes are not alleged to be part of a common scheme or plan, and it appears that there are no proposed common witnesses. As the Government stated at oral argument, "[i]t is a series of three unique and distinct events." (Tr. 1/8/08 at 159.)

Thus, the Court concludes that Count 1 was improperly joined with Counts 2-5 under Rule 8(a), and the Motion to Sever will be granted.[6] Accordingly, two separate trials will be held. A trial on Count 1 will be held first. Immediately upon its conclusion, the Court will

---

[6] The Court need not address the issue of prejudice under Rule 14 because it finds that joinder was improper under Rule 8.

empanel a new jury and conduct a trial on Counts 2-5.

## IV.     Motion to Admit Evidence of Prior Conviction

On August 11, 2006, Mr. Brown was arrested in New Castle County, Delaware after picking up a package containing nearly 7 pounds of marijuana from a rented mailbox.  A police scanner was found in his car, and the mailbox had been rented with the use of false identification.  Mr. Brown used the house at 5045 Irving Street as collateral to post bail.  He later entered a guilty plea to the charges of possession with intent to deliver marijuana and criminal impersonation.  He is currently serving a sentence on these convictions.

The Government seeks to introduce evidence of Mr. Brown's August 11, 2006 arrest and conviction on the grounds that it is relevant to both of the crimes charged in the present case.  The Government asserts that each of the three offenses (the March 2006 car stop, the October 2006 seizure from 5045 Irving Street, and the New Castle County conviction relating to the August 2006 arrest) is admissible to show the likelihood of the other offenses having occurred.

Under Rule 404(b), evidence "of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Civ. P. 404(b).

Courts have held that "in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." United States v. Cassell, 292 F.3d 788, 793 (D.C. Cir. 2002) (citing Huddleston v. United States, 485 U.S. 681, 689 (1988)).  For example, evidence of drug trafficking may be admitted under Rule 404(b) to show

that the defendant had knowledge and intent relevant to the charged crime, see, e.g., United States v. Martinez, 182 F.1107, 1111 (9th Cir. 1999), or to show motive for the possession of a firearm, see, e.g., United States v. Jacobs, 44 F.3d 1219, 1224 (3d Cir. 1995).

Here, the August 2006 arrest and conviction is likely admissible with respect to both the March 12, 2006 gun possession charge and the October 23, 2006 gun and drug possession charges. It is relevant to show motive, preparation, plan, knowledge and absence of mistake and, therefore, admissible under Rule 404(b).

Under Rule 403, however, the Court must nonetheless balance the potential prejudice to Mr. Brown with the probative value of the August 2006 events. With respect to the October 23, 2006 charges, the August 2006 drug possession conviction is highly probative because of the similarity not just of the narcotic involved (marijuana), but also because of the similar packaging. Because Mr. Brown was not present at 5045 Irving Street when law enforcement personnel found and seized the drugs and weapons, the October 23, 2006 possession charges rely on the concept of constructive possession. The August 2006 conviction arguably links Mr. Brown to the items later seized from 5045 Irving Street by showing Mr. Brown's knowledge and intent, as well as a motive and an overall scheme or plan. Thus, the risk of unfair prejudice does not substantially outweigh the probative value of the August 2006 conviction *with respect to the October 23, 2006 charges*.

In contrast, the probative value of the August 2006 conviction is relatively low with respect to the March 12, 2006 possession charge. There is nothing to speak of linking that alleged offense to any drug charge, and although the subsequent possession of marijuana is evidence of motive for possessing a weapon, the August 2006 arrest occurred some five months

11

after the March 12, 2006 seizure.  On the other hand, the risk of unfair prejudice is high.  Evidence of the August 2006 drug conviction, particularly if coupled with evidence of the October 23, 2006 offenses, likely will create an assumption or inference of Mr. Brown's possession of the firearm.  Moreover, the sheer quantity of alleged "bad acts" raises a high risk of "bad person" prejudice.  Thus, the Court concludes that with respect to the March 12, 2006 offense, the danger of unfair prejudice to Mr. Brown substantially outweighs the probative value of the August 2006 conviction and, therefore, such evidence will not be admissible at the trial for the March 12, 2006 offense.

**CONCLUSION**

For the foregoing reasons, the Court will deny both motions to suppress and grant the Motion to Sever.  Evidence of Mr. Brown's August 2006 arrest and conviction is admissible only with respect to the October 23, 2006 charges.  An Order consistent with this Memorandum follows.

BY THE COURT:


S/GENE E. K. PRATTER
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL BROWN** | : | **NO.  07-0296-1** |

## ORDER

AND NOW, this 16th day of January, 2008, upon consideration of the Defendant's Motion to Suppress Items Seized on March 12, 2006 (Docket No. 25), the Defendant's Motion to Suppress Items Seized on October 23, 2006 (Docket No. 26), the Defendant's Motion to Sever Trials (Docket No. 27), and the Government's responses thereto (Docket No. 32), it is hereby ORDERED that:

1. The Motion to Suppress Items Seized on March 12, 2006 (Doc. No. 25) is DENIED.

2. The Motion to Suppress Items Seized on October 23, 2006 (Doc. No. 26) is DENIED.

3. The Motion to Sever Trials (Doc. No. 27) is GRANTED so that Count 1 and Counts 2-5 of the Superseding Indictment will be tried in two separate proceedings.

4. The Government's Motion (Doc. No. 32)[7] to admit evidence of the August 2006 arrest and conviction is GRANTED IN PART and DENIED IN PART as outlined in the accompanying Memorandum.

BY THE COURT:

S/GENE E.K. PRATTER
GENE E.K. PRATTER
United States District Judge

---

[7] Even though it was not docketed as such, the Court will treat the Government's response (Docket No. 32) as a motion because it includes a separate motion.